**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL CUSTOM ELEMENT DESIGN FACTORY, INC., | ) | |
| Plaintiff, | ) | No. 24-cv-12954 |
| v. | ) | Judge Andrea R. Wood |
| ABOVO8 LLC d/b/a GIGI SEASONS, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff International Custom Element Design Factory, Inc. ("ICE Design") asserts several claims against its former officer, Defendant Georgios M. Georgiou, arising out of his departure from ICE Design to start a competing business, Defendant Abovo8 LLC, d/b/a GiGi Seasons ("GiGi Seasons"). Defendants filed a motion to dismiss the Corrected First Amended Complaint ("CFAC") and later filed a motion to supplement the record in support of the motion. (Defs.' Mot. to Dismiss, Dkt. No. 18; Defs.' Mot. to Suppl. the Record, Dkt. No. 56.) For the reasons that follow, the motion to dismiss is granted in part and denied in part, and the motion to supplement the record is denied.[1]

**BACKGROUND**

For purposes of Defendants' motion to dismiss, the Court accepts all well-pleaded factual allegations in the CFAC as true and draws all reasonable inferences from those facts in favor of

[1] Defendants rely on much of the evidence offered in support of their motion to dismiss as the basis for their motion for sanctions. (*See* Mot. for Sanctions, Dkt. No. 69.) The motion for sanctions will be addressed by separate order.

ICE Design as the non-moving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The CFAC alleges as follows.

ICE Design is an Illinois corporation that markets seasonal holiday decorations within the United States and abroad. (CFAC ¶¶ 7–8, Dkt. No. 15.) Georgiou was an executive officer of ICE Design until February 2017, when he resigned from the company and started his own decorations business, GiGi Seasons. (*Id.* ¶¶ 15–18.) Immediately thereafter, Defendants and ICE Design negotiated the conditions of Georgiou's departure through their attorneys. (*See id.* ¶¶ 21–30.) On March 2, 2017, ICE Design sent Defendants a separation agreement, but Georgiou did not sign it. (*Id.* ¶¶ 19–20.) On March 30, 2017, Defendants' counsel represented to ICE Design that "he ha[d] repeatedly and emphatically instructed his client not to retain any [of ICE Design's] company information and that Georgiou had repeatedly and emphatically told him that he had not." (*Id.* ¶ 23.) He also represented that Georgiou would sign a statement affirming that he has returned or deleted all company information. (*Id.* ¶ 24.) The next day, ICE Design's counsel delivered the statement, designated as a "Letter of Affirmation," for signature. (*Id.* ¶ 25.) On April 4, 2017, Defendants' counsel informed ICE Design's counsel that Georgiou would not sign the Letter of Affirmation. (*Id.* ¶ 27.) ICE Design alleges that, upon information and belief, Georgiou never signed the Letter of Affirmation. (*Id.* ¶ 28.)

On March 19, 2023, ICE Design learned from a manufacturing contact that GiGi Seasons had allegedly been using its proprietary information without authorization since October 2, 2017. (*Id.* ¶¶ 29.) On May 25, 2023, ICE Design's counsel notified Defendants that they were using ICE Design's proprietary information and copyrighted material without authorization. (*Id.* ¶ 30.) On December 17, 2024, ICE Design brought this action against Defendants GiGi Seasons and Georgiou, asserting claims for trade secret misappropriation (Count I), breach of fiduciary duty

(Count II), intentional interference with contractual relations (Count III), intentional interference with economic advantage (Count IV), and copyright infringement (Count V). Defendants have moved to dismiss the CFAC. In their motion to dismiss the CFAC, Defendants argue for dismissal based on the statute of limitations, preemption, and uncopyrightability.

## DISCUSSION

### I. The Record

Defendants attached several exhibits to their motion to dismiss. And after receiving further materials through discovery, Defendants filed a motion to supplement the record on the motion to dismiss with five e-mail messages in support of their statute-of-limitations defense. (Dkt. No. 56.) Federal Rule of Civil Procedure 12(d) provides that, "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Accordingly, "[o]nce a defendant moving to dismiss under Rule 12(b)(6) submits documents with its motion . . . the court must either ignore those documents or convert the motion to one for summary judgment." *Molon Motor & Coil Corp. v. Segue Elecs., Inc.*, No. 10 C 1683, 2010 WL 11883641, at *1 (N.D. Ill. Oct. 6, 2010). Under an exception to this rule, courts may consider materials attached to a motion to dismiss without converting the motion if those materials are "referred to in the plaintiff's complaint and are central to his claim." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (emphasis omitted). This exception is "narrow" and typically "aimed at cases interpreting, for example, a contract." *Id.*

The Court declines to convert the instant motion to dismiss into one for summary judgment. *See Levenstein*, 164 F.3d at 347 (holding that the district court was "within its discretion" to decline to convert a motion to dismiss where the nonmovant "wanted further

discovery"); *Taleyarkhan v. Purdue Univ.*, 837 F. Supp. 2d 965, 969 (N.D. Ind. 2011) (declining to convert motion where doing so would "confuse and complicate matters"); *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 949 (N.D. Ill. 2015) (declining to convert motion where "neither party appear[ed] to favor conversion"). Thus, the Court may only consider evidence that is referenced in the CFAC and central to ICE Design's claim. *Levenstein*, 164 F.3d at 347. The only evidence proffered by Defendants that meets these criteria is Exhibit E to the motion to dismiss, the Copyright Registration for ICE Design's Detail Purchase Order Form (Reg. No. TX0009376217). This copyright registration is directly referenced in the complaint (CFAC ¶ 66) and is central to ICE Design's copyright infringement claim just as a contract would be central to a breach of contract claim. *See, e.g.*, *Blue Book Servs., Inc. v. Farm J., Inc.*, 435 F. Supp. 3d 912, 916 (N.D. Ill. 2020) (considering copyright registrations at pleadings stage because they were both referenced in and central to the plaintiff's infringement claim). Thus, the Court will consider only Exhibit E to the motion to dismiss.[2]

## II. Defendants' Motion to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

[2] The remaining exhibits attached to the motion to dismiss and offered in the motion to supplement the record fail one or both of the requirements for consideration. First, the CFAC does not reference the e-mail messages attached in Exhibit B, the preservation letter and related correspondence attached in Exhibit D, or the communications submitted in the motion to supplement the record. Moreover, these materials are not central to ICE Design's claims. Meanwhile, the CFAC references the affirmation attached as Exhibit C and the separation agreement attached as Exhibit A, but neither of these documents are central to ICE Design's claims. Whether Defendants misappropriated trade secrets, tortiously interfered with ICE Design's business, or impermissibly reproduced ICE Design's copyrighted work does not depend on e-mails between attorneys, the contents of agreements proposed by ICE Design during Georgiou's separation, or e-mails between ICE Design and its clients. Defendants' proffered evidence may be useful to their ***defense***, but it is not central to ICE Design's ***claims***.

pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defendants argue that the claims in Counts I–IV must be dismissed because they are barred by the statute of limitations. They also argue that the claims in Counts II–IV are preempted.[3] Finally, they argue that Count V must be dismissed because it is based upon uncopyrightable subject matter. Each of these arguments constitutes an affirmative defense. Although "a complaint need not anticipate and overcome affirmative defenses, . . . dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish" the affirmative defense. *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009).

### A. Count I: Trade Secret Misappropriation

In Count I, ICE Design asserts a claim for trade secret misappropriation under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1, and the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836. (CFAC ¶ 34.) "To state a cognizable trade secret claim under either statute, [a plaintiff] must allege: (1) existence of a trade secret; (2) that a [d]efendant

[3] Initially, Defendants' sole argument for dismissal of Counts I–IV was the statute of limitations. Then, in their reply brief, Defendants argued for the first time that Counts II–IV are preempted by the ITSA. As a general rule, "arguments raised for the first time in a reply brief are waived." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Here, however, ICE Design had the opportunity to file a sur-reply addressing Defendants' preemption argument. Accordingly, the Court will consider the new arguments raised in Defendants' reply. *See, e.g.*, *Jordan v. City Chicago*, No. 08 C 6902, 2012 WL 254243, at *1 (N.D. Ill. Jan. 27, 2012) ("Because the Court gave Defendants the opportunity to respond to Plaintiff's new arguments in a sur-reply, however, that principle does not apply and the Court will consider the arguments raised in Plaintiff's reply.").

misappropriated; and (3) used in the [d]efendant's business." *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 613 (N.D. Ill. 2023). Rather than arguing that ICE Design failed to allege these elements, Defendants argue that the ITSA claim is untimely. An ITSA claim must be brought "within 5 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." 765 ILCS 1065/7. "In other words, the action must be brought within five years after the plaintiff had either actual or constructive notice of the defendant's alleged misappropriation." *Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 850 (N.D. Ill. 2017). Because ICE Design first brought its misappropriation claim on December 17, 2024, the ITSA claim is time-barred if it accrued before December 17, 2019.

Defendants argue that ICE Design knew about Defendants' alleged misappropriation in 2017. This argument is based on e-mails from ICE Design's counsel to Defendants' counsel in 2017 claiming that Defendants possessed trade secrets (Ex. B to Mot. to Dismiss) and the litigation-hold letter directing Defendants to preserve certain information and communications (Ex. D to Mot. to Dismiss). Neither of these documents are properly before the Court at the pleadings stage, however. Meanwhile, the CFAC contains no allegations establishing that ICE Design knew or should have known that Defendants misappropriated trade secrets before December 17, 2021. To the contrary, it was not until March 19, 2023 that ICE Design allegedly "received notice from one of its manufacturing contacts that Defendants were using Plaintiff's proprietary information since around October 2, 2017." (CFAC ¶ 29.) Thus, based on the CFAC's allegations, ICE Design was not on notice of the alleged misappropriation until 2023—

putting the claim well within the statute of limitations. Therefore, the Court declines to find the ITSA claim untimely, and the motion to dismiss is denied as to Count I.[4]

### B. Count II: Breach of Fiduciary Duty

In Count II, ICE Design alleges that Georgiou breached his fiduciary duty of loyalty to ICE Design by retaining and using its proprietary information, including customer and vender lists, to compete with ICE Design after his separation. (CFAC ¶¶ 38–50.) "To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must plead: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages to the plaintiff as a result of that breach." *McLaughlin v. Chicago Transit Auth.*, 243 F. Supp. 2d 778, 779 (N.D. Ill. 2003).

#### 1. ITSA Preemption

The Court begins with ITSA preemption. The ITSA is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of [Illinois] providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a). "Through the ITSA, Illinois abolished all common law theories of misuse of" trade secrets. *REXA, Inc. v. Chester*, 42 F.4th 652, 670 (7th Cir. 2022). "Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the [ITSA's] definition." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014); *TF Glob. Markets (Aust) Ltd. v. Sorenson*, No. 21-CV-00208, 2023 WL 2138999, at *6 (N.D. Ill. Feb. 17, 2023) (collecting cases). In sum, "the ITSA preempts claims

[4] The Court focuses on the ITSA claim because Defendants' motion does not discuss the DTSA. Even if the Court were to overlook this waiver, it would not find the DTSA claim time-barred. The "DTSA provides for a three-year statute of limitations, beginning when the plaintiff discovers or by the exercise of reasonable diligence should have discovered the alleged misappropriation." *Sonrai Systems*, 658 F. Supp. 3d at 617 (citing 18 U.S.C. § 1836(d)). As noted, the CFAC supports an inference that ICE Design first learned of the misappropriation in 2023, which would place the DTSA claim (filed in 2024) within the three-year statute of limitations.

for misappropriation of confidential information (whether a trade secret or not); but it does not preempt claims that do not hinge on whether the information at issue is confidential." *Westrock Co. & Victory Packaging, LP v. Dillon*, No. 21-CV-05388, 2021 WL 6064038, at *18 (N.D. Ill. Dec. 22, 2021). Thus, in deciding whether the ITSA preempts a claim, courts ask whether the claim "would stand regardless of whether trade secrets were at issue." *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 835 (N.D. Ill. 2019).

The Court finds that ICE Design's claim for breach of fiduciary duty is not preempted. Under Illinois law, a corporate officer has the right to compete with his former employer after his separation from such employer. *Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1149 (Ill. App. Ct. 2009). In such competition, however, the former officer violates his duty of loyalty to the former employer when he competes based on "information acquired during the [employment] relationship." *Comedy Cottage, Inc. v. Berk*, 495 N.E.2d 1006, 1011 (Ill. App. Ct. 1986); *Alpha Schol Bus*, 910 N.E.2d at 1149 ("This duty of loyalty is not inconsistent with the officer's right to enter into competition with a former employer upon leaving such employment, but the officer's resignation does not sever liability for transactions that began (or were based upon information acquired) while the officer was employed and completed after the officer resigned."). This is so even if the "information involved . . . does not rise to the level of a trade secret." *Comedy Cottage*, 495 N.E.2d at 1011.

Based on these principles, ICE Design can state a claim for breach of fiduciary duty even if the misappropriated client lists and other information were not confidential. In *Alpha School Bus*, for example, the Illinois Court of Appeals held that a breach of fiduciary duty claim was not preempted by ITSA where it was based on allegations that the defendant formed a competing business and solicited his fellow colleagues to work at it while he remained employed as an

officer by the plaintiff-company, and then used the plaintiff's trade secrets in competition. *Alpha School Bus*, 910 N.E. 2d at 1150. Similarly, in *Hecny Transportation, Inc. v. Chu*, the Seventh Circuit held that the ITSA would not preempt a breach of fiduciary duty claim based on the defendant's taking of a non-confidential client list. 430 F.3d 402, 405 (7th Cir. 2005). In so holding, the Seventh Circuit reasoned that ITSA preemption "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." *Id.*

Here, the CFAC alleges that Georgiou founded a competitor business and used information he gained from his position at ICE Design regarding its client base in order to compete directly with ICE Design for those same clients. Even if the relevant information was not confidential, Georgiou's use of that information could plausibly support a breach of fiduciary duty claim. Thus, although Georgiou is not alleged to have formed GiGi Seasons until after he left ICE Design (unlike the officer in *Alpha School Bus*), the allegations are sufficient to provide a basis for ICE Design's breach of fiduciary duty claim that is separate from the relevant information's confidentiality. *See, e.g.*, *Walgreens Co. v. Peters*, No. 21 C 2522, 2021 WL 4502125, at *3 (N.D. Ill. Oct. 1, 2021) (denying motion to dismiss fiduciary duty claim based on ITSA preemption where the defendant "continued to access [the plaintiff's] information even after he left its employ"). Moreover, ICE Design's characterization of the client lists and other information as trade secrets does not compel a finding of preemption. *See Hecny*, 430 F.3d at 405 ("An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record."). Accordingly, the Court declines to apply ITSA preemption to the breach of fiduciary duty claim.

### 2. Statute of Limitations

Defendants' second argument for dismissal of the breach of fiduciary duty claim is that it is time-barred. In Illinois, "a breach of fiduciary duty claim must be brought within five years after the cause of action accrued." *Fuller Family Holdings, LLC v. N. Tr. Co.*, 863 N.E.2d 743, 756 (Ill. App. Ct. 2007) (citing 735 ILCS 5/13–205). "Accrual occurs—and the clock starts to run—when 'the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *JP Morgan Chase Bank v. Kowalski*, No. 19-CV-05770, 2020 WL 6487313, at *2 (N.D. Ill. Nov. 4, 2020) (quoting *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980–81 (Ill. 1981)).

As alleged in the CFAC, ICE Design did not learn of Defendants' possession and use of its information until March 19, 2023, when a manufacturer informed ICE Design of Defendants' use of its information. (CFAC ¶ 29.) Meanwhile, the CFAC does not establish that ICE Design had reason to know that Defendants were using its information prior to March 19, 2023. The allegation that, as of March 30, 2017, Georgiou had "repeatedly and emphatically" represented that he retained no company information supports a finding that ICE Design was not yet on inquiry notice at the time of Georgiou's separation. (*Id.* ¶ 23.) To be sure, Georgiou's refusal to sign a Letter of Affirmation in April 2017 (*id.* ¶ 27) could conceivably support a countervailing inference, but the Court must draw all reasonable inferences in ICE Design's favor and may not dismiss a claim based on a half-baked affirmative defense at this stage. Thus, the Court finds that the breach of fiduciary duty claim pleaded cannot be dismissed as untimely.

Neither of Defendants' arguments for dismissal of Count II is successful. Accordingly, the motion to dismiss is denied as to ICE Design's claim for breach of fiduciary duty.

### C. Count III: Intentional Interference with Contract

In Count III, ICE Design asserts a claim for intentional interference with contractual relations. The elements of this claim are: "(1) the existence of a valid and enforceable contract; (2) defendant's awareness of the contractual relation; (3) defendant's intentional and unjustified inducement of breach of the contract; (4) a subsequent breach by a contracting party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach." *Lesaint Logistics, LLC v. Electra Bicycle Co., LLC*, 146 F. Supp. 3d 972, 978 (N.D. Ill. 2015) (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003)). "The ITSA preempts a tortious interference with contract claim where the tort claim relies on the misuse of confidential or secret information such that the tort claim could not survive regardless of whether the information at issue was non-confidential." *League Corp. v. Khan*, No. 24 C 7015, 2025 WL 1305281, at *4 (N.D. Ill. May 6, 2025).

#### 1. ITSA Preemption

ICE Design's allegations in support of its claim for intentional interference with contract are sparse. In essence, ICE Design alleges that Defendant used his "knowledge and access to [ICE Design's] contacts" with "significant partners, including AAFES, Amazon, Hobby Lobby, and others," to "undertak[e] activities designed to disrupt, undermine, or damage ICE Design Factory's business relationships." (CFAC ¶¶ 52, 54, 55.) Notably, the "trade secrets" alleged in Count I—and re-alleged in Count III (*id.* ¶ 51)—include client and vendor contact information. (*Id.* ¶ 33.) That said, due to the sparseness of ICE Design's allegations, the precise nature of Defendants' alleged interference is unclear. If, for example, Defendants' alleged interference amounted to more than the mere use of confidential information, then ICE Design may avoid ITSA preemption. Based on what has been pleaded, however, it is not clear from the CFAC that

ICE Design's tortious interference with contract claim "hinge[s] on whether the [contacts] at issue [were] confidential." *Amerikal Prods. Corp. v. Cave*, No. 24 C 11292, 2025 WL 1883743, at *6 (N.D. Ill. July 8, 2025). Because ITSA preemption is not clear from the face of the CFAC, the Court declines to find that it applies at the pleadings stage.

**2. Statute of Limitations**

Defendants' second argument for dismissal of Count III is that it is time-barred. The statute of limitations for this claim is five years, and it begins to run when the interfered-with contract is breached. *Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1410 (7th Cir. 1993) ("[A] tortious interference with contract claim accrues when the contract is breached."). In making this argument, Defendants point out that the CFAC does not actually allege any breach of ICE Design's contracts with third parties. Although ICE Design identifies the "significant partners" Defendants allegedly targeted, it does not specify the contracts that were allegedly breached or even allege that any contract was breached. The closest the CFAC comes to alleging a breach of contract is the allegation that Defendants "under[took] activities designed to disrupt, undermine, or damage ICE Design Factory's business relationships," including through "direct correspondence . . . to sever or otherwise interfere with" ICE Design's contracts. (*Id.* ¶¶ 55–56.) Because the CFAC does not allege the date of any alleged breach of contract and a claim for intentional interference accrues when the relevant contract is breached, it is not clear when any potential claim under this cause of action accrued.

That said, Defendants' argument that ICE Design failed to allege a breach of contract supports dismissal for failure to state a plausible claim. The CFAC contains no allegation that would support even an inference that one of ICE Design's partners breached their contract, let alone that any such breach was caused by Defendants' interference. The allegation of mere

"harm to . . . opportunities for growth and expansion" (*id.* ¶ 58) cannot by itself support a claim for interference with contract. Rather, a breach of contract caused by the defendant's interference is required. *See, e.g.*, *CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2024 WL 1435099, at *5 (N.D. Ill. Apr. 2, 2024) (finding counter-plaintiff failed to state a claim for intentional interference with contract where, despite identifying the contract at issue, the pleadings did "not explain how any of [the counter-defendants'] actions caused a third party . . . to breach a contract with [the counter-plaintiff]"); *Cartwright v. Cooney*, 788 F. Supp. 2d 744, 754 (N.D. Ill. 2011) ("Absent any allegation from which the Court plausibly could infer damages as a result of Defendant's conduct, Plaintiff cannot maintain a claim for tortious interference with contractual relations."); *Sagent Pharms. v. Farco USA, LLC*, No. 25 C 14080, 2026 WL 1229804, at *7 (N.D. Ill. May 5, 2026) (dismissing tortious interference of contract claim where the plaintiff failed to allege a breach of contract).

In short, ICE Design fails to plead a basis for an intentional interference with contract claim. Thus, Count III must be dismissed.

### D. Count IV: Intentional Interference with Economic Advantage

In Count IV, ICE Design asserts a claim for intentional interference with economic advantage. This claim has the following elements: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007). "Mere business competition is insufficient to establish tortious interference." *Freiburger v. Timmerman*, No. 13 CV 8174, 2016 WL 4493448, at *20 (N.D. Ill. Aug. 26, 2016). "But '[w]hile one may not simply

sue any competitor who lures away customers, the privilege of competition is not available to those who use wrongful means to interfere.'" *Id.* (quoting *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 994 (Ill. App. Ct. 2008)).

Unlike the claim for intentional interference with contract, which did not specify Defendants' means of interference, Count IV is expressly and solely based upon Defendants' misappropriation of trade secrets. Specifically, ICE Design alleges that it missed out on "over $25–30 million in cancelled contracts" because of "GiGi Seasons' unlawful competition using confidential information obtained from ICE Design." (*Id.* ¶ 62.) Thus, as alleged in the CFAC, the alleged impropriety in Defendants' interactions with ICE Design's clients was the use of confidential, rather than public, information. This claim therefore turns on the misappropriation of confidential information, and it is preempted by the ITSA. *See, e.g.*, *W. Union Co. v. Kula*, No. 17-CV-00280, 2017 WL 11562395, at *3 (N.D. Ill. June 13, 2017) (collecting cases showing that the "ITSA preempts tortious interference claims based on misappropriation of trade secrets" and finding that a tortious interference claim was preempted where the defendants "us[ed] trade secret information" to interfere with customers); *Westrock*, 2021 WL 6064038, at *18–19 (finding that a breach of fiduciary duty claim was not preempted by the ITSA because it was based on a breach of the duty of loyalty and not the confidentiality of information, but a tortious interference claim was preempted insofar as it was based on the plaintiff's allegations that the defendants "used confidential information to poach [the plaintiff's] customers").

ICE Design argues that finding Counts III and IV to be preempted at this stage would be premature because the Court has not determined whether this case involves any "trade secret" as that term is defined by the ITSA. However, Seventh Circuit precedent is clear that the relevant question is whether the information is confidential, not whether it is a technically a "trade

secret." *Spitz*, 759 F.3d at 733. Count IV is expressly based on Defendants' use of "confidential information." (CFAC ¶ 62.) The claim for tortious interference with economic advantage is dismissed with prejudice because it is preempted by the ITSA.[5]

**E. Count V: Copyright Infringement**

In Count V, ICE Design alleges that Defendants have infringed its copyrighted work entitled "ICE Design Factory Detail Purchase Order Form," Registration Number TX0009376217 (the "Copyrighted Work"). (CFAC ¶ 66.) The copyrighted material is a document titled "Detail Purchase Order." (*Id.* ¶ 67.) ICE Design alleges that GiGi Seasons has infringed the Copyrighted Work by reproducing it without authorization. (*Id.* ¶¶ 66–76.) A claim for copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012). A copyright registration "constitutes *prima facie* evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994).

Defendants argue that the copyright infringement claim must be dismissed because the Copyrighted Work is not "original" as it is a business form and therefore it is not copyrightable material. The Court declines to dismiss the copyright infringement claim on this basis at the pleadings stage. The presumption of validity accorded to a registered copyrighted work is sufficient to carry ICE Design's infringement claim over the Rule 12(b)(6) bar. *See, e.g.*, *Nextpulse, LLC v. Life Fitness, LLC*, No. 22 CV 03239, 2024 WL 1376213, at *4 (N.D. Ill. Mar. 31, 2024) ("To the extent that Life Fitness seeks to rebut the prima facie evidence of ownership established by Nextpulse's certificates of registration, rebuttal is inappropriate at the motion to

---

[5] Because the Court concludes that this claim is preempted, it does not reach Defendants' statute of limitations argument.

dismiss stage."); *JH v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 24 C 7758, 2025 WL 1262503, at *3 (N.D. Ill. Apr. 29, 2025) ("[A]t the motion to dismiss stage, the Court accepts JH's allegations that she has obtained a valid copyright for her potato drawing and leaves the question of the validity of the copyright for a more developed record."). Defendants' argument rests on questions better decided upon a more developed record. Accordingly, the motion to dismiss is denied as to Count V.

**CONCLUSION**

For the reasons stated above, Defendants' motion to supplement the record (Dkt. No. 56) is denied. Defendants' motion to dismiss the Corrected First Amended Complaint (Dkt. No. 18) is granted in part and denied in part. Specifically, the motion is granted with respect to Plaintiff's claims for intentional interference with contractual relations (Count III) and for intentional interference with economic advantage (Count IV), the latter of which is dismissed with prejudice.

ENTERED:

Dated: September 30, 2026

Andrea R. Wood
United States District Judge